Call the next case. Block 10, 2446 Jewel Food Stores v. Andrew Silva Good morning. Thank you for your support, counsel. My name is Paul Crowder, on behalf of the College of Jewel. Your Honor, it is a sharp intention to conclude a cert report on the Workers' Compensation Commission. Finding Mr. Silva's slip-and-falls to be compensable is both contrary to law and a manifesto of the evidence. Now, this case is a bit unusual for Workers' Compensation matters, in the fact that we had an extensive stipulated set of facts in this case, in addition to testimony. So, I'd like to begin my argument by reviewing a few of those perfect stipulations. It was agreed that Mr. Silva parked on a public street. There was a designated employee parking lot that he could have parked at. But he chose not to. He chose to park on a public street. And he agreed that he did this for his own convenience. In fact, the testimony subscript of that stipulation indicated that he frequently did this when his spaces were available on the street, because it was simply more convenient for him. Now, it was also stipulated, too, that Mr. Silva took a route and took him across a visitor parking space on the Jewel property. And it was also stipulated, too, that these visitor parking spaces were available for both employees and non-employees there to do business with Jewel. Now, it's true that he slipped and fell onto a property. But the route that he took was from a public parking spot for his own convenience. And the course that he took took him across a portion of the property that was separated by a bench from the rest of the property. And this property fell, which opened both employees and non-employees there to do business. Could you distinguish this case from Bomberito for me, please? Excuse me, Judge? Distinguish this case from Bomberito. From the Bomberito decision? Bomberito. The Bomberito decision. The Bomberito decision? Yeah, the Supreme Court decision in Bomberito. Where did the employee fall there? Fell in an alley. Well, Your Honor, I... Because that was the route that he had to take to get into the building. Your Honor, my contention in this case is more similar to Walden. In fact, the decision from the Commission and from the Circuit Court did not rest upon that case. It's actually cited both the Circuit Court's word... I don't particularly care what the Circuit Court cited. My question is, in Bomberito, the Supreme Court gave benefits to an employee who was forced to walk through a public alleyway in order to get into the building and crossed over and was injured. And they said, well, that's the way you made him come to work. Okay, well, there's a great difference. He was forced to walk this way. They had an employee parking lot. That was stipulated. Yeah, but here, wasn't there also evidence that the walk facility entrance was obstructed or unsafe and that he had to use the street parking? Wasn't there some evidence of that? That's a great question, Judge. There was testimony about the conditions of the parking lot. But here's what you need to remember. It's the Petitioner's burden to prove all elements of his claim. And there was no testimony as to what the conditions of the employee parking lot were like or the opportunity of the parking lot on the date of his fall. Now, the Petitioner said, you know, when I last punched out, there was some snow and they weren't doing a good job of bombing. But he punched out Christmas Eve, December 24. He didn't work Christmas Day, December 25. The first day that he came back was December 26. He didn't check that lot. He had one witness, George Slimas. George Slimas wasn't checking the lot on December 26 either. So if you're right, there was some testimony to that effect. But that's pure speculation. Had Mr. Silva gone to that employee parking lot that morning and said, geez, this is a riot? Well, why does he have to go that morning? You're saying pure speculation. I'll ask opposing counsel. The issue was, was there evidence in the record that Jules designated a walkway for employees traveling from the parking lot was often obstructed? Is there evidence in the record to support that? There was testimony by the plaintiffs and by Mr. Slimas that sometimes there was obstruction in the parking lot. Now, there was also testimony by Mr. Grafton, the witness for Jules, that they did maintain in the parking lot. So I think there was a difference of opinion. If they actually made the condition of it. But I still think the bottom line is, he's got to be able to testify to what the condition was that day. It would be different if he said, you know what? I normally park in an employee parking lot, but because I saw the conditions were like the last few weeks, they were doing a terrible job in winter, I decided to park on the street. So there was no evidence of that day? There was no testimony as to what the conditions were that particular day, you're saying? Well, he never made it to the parking lot. Not from the petitioner and not from George Slimas. Not from the two witnesses the petitioner presented, no. Where did he fall? Where did he fall? He fell in a visitor parking spot. In the employee parking lot. I mean, in Jules' parking lot. It was, there was a difference. On the north side of the building, there was a bench in the lot that was designated solely for employees. Right. Where he fell, it was outside of that bench. If I wanted to go park, if anyone here wanted to go park in an employee parking lot, we can do it. I'd get a pass card. If anyone here wanted to park in an employee, a visitor parking spot, I don't need a pass card. I just pull up my car and park right there. I've done it many times. Wait a minute. Wasn't that area also available for employees? Wasn't that the testimony? Absolutely. Because the Jules is like a campus there. So if you were in the fresh food area and you wanted to go to transportation, you could park right there. But it was also for vendors. It was for people that are doing business. It was for employees and non-employees. It wasn't for the general public. Excuse me? It's not the general public. Well, you know, I suppose it depends on the definition. I was thinking about that in Walmart. Because, you know, that's the big distinction on Walmart. We have a claim to file that this was only for the general public, so that's why it shows a greater risk. But really, I mean, is a Walmart parking lot? When we go there, where are we going to Walmart for? We're going there to shop and buy things. We're going there to do business with them. And isn't it the same concept for Jules? Or if they have a vendor that's working on their coffee machine or selling parts for their trucks or doing things like that, what are they there to do for? They're there to do business. So if we're going to say, well, if you're not really the general public and you're parking at a visitor's spot, then why are you going to Walmart? I mean, but I draw the family's opinion. The Walmart parking lot? Of course not. The Walmart parking lot is there for people who are there to do business with that store. There's no difference. And so that's the distinction I make. And that's exactly why, in this case, it's so similar to Walmart. The analogy that I'd like to draw to differentiate this case between Morris-Harvick, which every lower body is cited in support of Mr. Soto's confessibility, is this. I think the separation between the two, at least the way I've seen it, is it seems to me that Morris-Harvick is almost as though what's said is, look, if you are the employer and you figuratively put your hand on an employee, almost as though you're allowed to trust her and you're treating your employee like a pawn, you can direct and move them where you want to. Well, now you've clearly separated that individual from everybody else who's not an employer. And henceforth, put them at greater risk. And that's why when we look at Morris-Harvick, it's clear. In that instance, we had a waitress at a restaurant. The restaurant is surrounded by a parking lot. And anybody can park anywhere they want to park, not the general public. But the employees were said, you have to park in this spot for us to leave the best space for the employees. So what we see there is the employer is figuratively putting her hand on that employee and leaving them with one portion of the lot and thus separating them from everybody else. But when we look at Wal-Mart, I think the difference is they said in Wal-Mart, they didn't put their hand on that employee. The employee was being picked up by a friend on a break who, by coincidence, was a portion of the lot reserved for the employees. But I think the difference between the two is, look, no one puts their hand and moves the individual that way. And that's the same concept that I'd like to bring to this case. Yeah, but was there any evidence in Wal-Mart that because of obstructions or ongoing problems with the entryway, that the person slipped on the ice because they were trying to use a certain entryway? Wal-Mart had nothing to do with that, did it? Absolutely not. I understand that... It's in the mix here. And I know you don't want to focus in on that, but I think that's part of the decision here. Yes, you can have a general, and that's in the Barmerito, you know, public lot or parking lot privately and say you should use this. But if somehow it's not realistically available to the employee on a regular basis, and they have to depart from that, and they fall, that's part of the problem there. Well, Judge, what I would try to respond to this is that in the commission decision, the arbitrator, the commissioner, that's not by what the basis is plentiful. They basically said, this is Morris-Harvey, it's compensable. I appreciate the argument, but that's not how compensability has been ruled. Compensability has been ruled pretty simply based upon the Morris-Harvey decision. And, in fact, so that's why my argument is that this is contrary to the law. The way that they apply the facts and the application of the law is it's not correct. Morris-Harvey does not fit this fact pattern. Wal-Mart does. And, again, it's not going to raise the issues as far as the obstruction, which is a factual difference between witnesses that, again, it's not a trust. At least that decision. As far as the manifest weight issue goes, the arbitrator, and, again, this decision has been docketed throughout, stated that the visitor parking areas were used by other jewel employees who worked at other locations and had occasional visits to the distribution center, but denied them parking to prevent access to the parking lot. That was the arbitrator's decision. But that's contrary to what was stipulated. What was stipulated was that the parking spots were for employees of jewel and not employees there to do visits or visit. So, clearly, the arbitrator was under some kind of constant misconception that these visitor parking spaces were for other jewel employees who didn't have access to the transportation center. And, clearly, that's not the case, and that's not even a matter of argument. That's a matter of stipulated facts. So, in summary and honors, well, I appreciate the arguments for the issue that you raised about the obstructions. The issue really here is every lower body has ruled on your department, and I find this case to be... Are we obligated to follow every lower body? No. Of course not. I... I think the issue that I have is this is the first time that's been raised. The decisions we've had before us have all relied upon, I think, the incorrect case. And I'm not asking that this court indicate that that's the correct justification either, because I don't think there's a difference. And I think the difference is nobody went in that lot on December 26 when this van fell. And if somebody would have... Again, if you would have gone in December 26, and you would have seen the conditions of the lot, it would be hard for me to argue with what you're saying. But there's no evidence. It's the... It's not... It's still deficient for approval of all... All right, let me... And, you know, you raise a point that has some intuitive appeal, I suppose. You're saying, okay, you recognize Bomberito. You're recognizing cases that say, look, even though the employer has or does it in the parking, if it really is obstructed or unsafe, then you recognize if the employee takes an alternate route, it should be compensable. Your point seems to be, well, even if there was evidence that it was obstructed, generally, there's nothing on that, no testimony as to what it was that day that he couldn't have gone in the lot. Is that what you're saying? Yes, yes, Your Honor. And let's face it. This is Chicago. You know how the winters go. I mean, one day we hit it with snow. The next day, 70 degrees melts. The next day, it freezes, and it's a pool of ice. So for him to say, well, on December 24th, it was in this condition, and that's why he did this on December 26th, that's pure speculation on his part. He doesn't know because he wasn't in the lot on December 26th. And so that would be my final point on that. So in summation, it's our intention that the decisions both counter the law against the manifesto and the evidence, and we ask this Court to reverse it and finally fall out of being compensable. Thank you, counsel. Counsel? Yes, Your Honor. My name is Raymond. I represent the petitioner's family. This is not a lot of court time. I've come across it in the first time. And I think the Court was correct when it was talking about the intraday facility. Could you speak up a little bit? Andrew Silva had utilized the same entryway into this facility for years as an employee. This is the oldest facility. Counsel, why do you believe that this facility is somehow analogous to a general parking lot where the general public has access to it? It is not. It is a production facility that is only for employees and people that have a business with Jewell, for example, Walmart electricians, the people that are necessary to conduct business, to maintain the business center, to conduct business, period. So a general public comes visiting and it is a lot of non-profit. That is the distinction. And he wants you to believe that somehow there was some rule that required my client to use the north gate versus the south gate. Completely devoid of the facts of this case. That was never an issue that was presented and shown in this actual pattern. Why is that important? Because Jewell has two separate entrances, north and south. And they're trying to say, well, we have a parking lot back there. Okay. And my argument is, okay, so what? Why would that make any difference to the analysis? Because the analysis looks at how does the employee go in. This is a regular gate. This is a regular entryway. There's nothing special about this entryway. This is an entryway for employees and it's acknowledged in the record. This is an entryway for employees. So for them to say, well, because they didn't use the back parking lot, there's nothing that requires them to use the back parking lot. So it's not a rule requirement. All right? They provide that parking lot. Okay, great. There was testimony by those who were in this case, so that they'll be able to maintain it. Charles Grafton, which I think is the Jewell representative, and I think he was the Jewell representative who testified, he came to testify that it was icy. It was a very slippery condition. He hasn't testified to it. And then the issue then goes to is this the regular route that any employee can take to go into the facility? And then is this hazardous condition associated with that going into the facility? Now, to be clear, the only reason that the facility was there was for work. He wasn't going in any particular direction. It was someone else or some sidetracker. Is part of your argument that the facility entrance was often obstructed and unsafe? Is that part of your argument or not? Are you saying that's got nothing to do with your position? My position is that that was part of the testimony. Isn't that an important part of the testimony? And the way that I looked at the analysis was done by the prior arbitrator, Dr. Jess Taylor. I didn't look to that as a significant component of their decision-making. So it is a part of the record. But one of the things I do know, having done public work for many years, is that the appellate court certainly can look at that. And my memory is, and I hope I don't mistake it, is that the case law tells us that the appellate court has the right to affirm the decision of the court. On any basis in the record? On any basis in the record. Right. So, but with that said, all I want to do is make sure that the state knows that this reliance on Wal-Mart isn't a fiscal constraint. They're just trying to throw this in, trying to find a way. Because if you buy their argument, then what you're saying is that any private facility who has secondary insurance can avoid liability in this manner. I certainly don't believe there is an intent of the statute or the case law anywhere along the line. And I think the court was right to bring up the issues of how the court had in Burrito had brought up the public route that they gave benefits to. Well, in Balmerito, though, again, they held it was not a situation where the claimant freely chose to use a certain route and was injured in doing so. Because if that's the case, and if your claimant generally parks on the street and falls then crossing the street, there's not going to be any compensation. They held that because of the conditions of the area, and he was required to enter through a certain door, that that was a substantial element in the recovery. In other words, he uses putting your hand on the employee. If you're designating an employee to park in a certain lot on your property and the employee falls, then clearly there's compensability there. If he can park anywhere, it's like the general public, isn't it? I disagree because this isn't a general public facility. And what they're forgetting is that, okay, at Mr. Silva, well, I don't even want to go into that now. What I'm going to just go is that Mr. Silva crossed the street from the facility right next to the gate, which is the normal entryway into the facility. This is the entryway. And when he gets to a certain point, he falls on Jewel property, which Charles Kraft then freely and openly admits to the record that it's their responsibility to maintain the admissible conditions for isolation. All right? They had not gotten to the condition yet to absolve the condition. It was all solved or cleared out. Let's just put it real simply. From the place that he parked his car to the entrance to the Jewel facility, was he taking a direct route that took him over the Jewel property on which he fell? It was a direct route. Literally, there was a parking spot right there. This was the entryway to the facility. Well, but he fell on Jewel property. He did. He did, which is, as I want to say repeatedly, that this is the normal entryway for employees. It's not accessible by the general public in any shape or form. And while I do concede with counsel that there is the arbitrator in this interpretation and his finding did make that slight differentiation from the stipulation and that this actual person, my contention is that it makes no difference in the final analysis. It does not affect or impact it in any way because you're still up with the employee who's mandated to be there at 8 o'clock. My client gets there at 7.55. He's entering the facility the normal, regular way into the facility. It's a condition of employment that he be there at a particular time. He's doing that particular deed on behalf of the employer who's walking into the facility. He's on the property, about to enter the gate when he then takes a fall on the property that is owned, maintained, controlled by the employer. Essentially, that's what we're all in some argument about back and forth. But I don't think Walmart has any place in this analysis. And the reference to DASA is completely misfunded. As my client has put it directly, there was no collateral for the direction he took or anything of that nature or anything which was subjected to official danger. This is the hazardous condition that was presented by the employer. And their failure to maintain the premises on this particular date which is September 26th, 2008. So I ask this court to affirm the lower court's ruling and deny any policy in this case. The panel. Thank you. Your Honor, simply because someone's on an employer's property and slips, of course, it doesn't make it compensable. I mean, the question still is, where is the greater risk? And in response, this is a visitor parking spot that is not just for dual employees. And we can characterize what does a non-visitor mean. That is, as counsel has been discussing, Walmart, in any business, you're there to conduct business. You're not there to go visit somebody on the evening you watch the ball game. And so while it might be a different situation, you're still there to do business. And Walmart, as the general public has interpreted, in the same case this year. In summation, I think there's only two ways this could be compensable. That would be, again, if the claimant was somehow directed around that facility by Juul, clearly a parking employee on that particular case, but he didn't. Or second, as you have raised, Your Honor, it was due to the alleged obstruction of the parking lot, which is a different testimony. Again, I would submit that it's pure speculation on Mr. Silva's part as to the conditions of the parking lot, because he never proved what the conditions were on the day that he fell. And it's still his obligation as the petitioner to prove that in order to be entitled to compensability. Was he taking the direct route to finding out where he parked his car? He was taking the most convenient route, I believe. Well, that's all right, but it was a direct route, was it not? Sure, direct. He took the more convenient route. He could have parked in the employee parking lot. Well, of course he could have. But that was clearly not as convenient. And if you look at the testimony, he didn't just park there. It was snowy. He stayed in the car for an hour. It was legal, because it was the most convenient. So based upon those arguments, we ask that the incision be reversed in this case, Your Honor. Thank you. Thank you, Counsel to the Court. We'll take your matter under advisory for dispute. Attend the recess until about 1 o'clock.